## AFFIDAVIT OF SPECIAL AGENT KONSTANTINOS BALOS

I, Konstantinos Balos, being duly sworn, hereby depose and state as follows:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), United States Department of Justice, currently assigned to the Boston Arson and Explosives Group. As a special agent, my duties include the investigation of federal firearms, arson, and explosives violations. I have been assigned to the Boston Field Division of the ATF since 2001. Prior to that I was a Special Agent with the Office of Inspector General, United States Agriculture Department since 1997. I am a graduate of the Federal Law Enforcement Training Center, the Inspector General Academy, the ATF National Academy and the ATF Arson & Post-Blast Training Programs.

2. As a result of my training and experience as an ATF Special Agent, I am familiar with Federal criminal laws and know that it is a violation of Title 18, United States Code, Section 844(i) for any person to maliciously damage or destroy, or attempt to damage or destroy, by means of fire or an explosive, property used in interstate commerce or in any activity affecting interstate commerce. I make this affidavit in support of a criminal complaint charging Michael Vaccaro, DOB 5/3/56, with attempted arson.

3. This affidavit is not intended to set forth all of the

1

information that I and other law enforcement personnel have learned during this investigation, but is submitted as a basis for probable cause to believe that Michael Vaccaro committed the above-described offense.

4. On Friday, October 1, 2004, at approximately 10:37 p.m., an explosion occurred at 47-49 Chapel Street in Lowell, Massachusetts. 47-49 Chapel Street is located in a residential neighborhood and is a single two-story apartment building containing four rental units. As you look at the building from the street, there is a left-side entry door and a right-side entry door. The entry door to the right is identified as 47 Chapel Street and the door to the left is identified as 49 Chapel Street. At the time of the explosion, all four units were being rented. Lowell Fire Department personnel responded to the scene and found an extinguished fire with a strong odor of gasoline and visible fire damage to the entryway, including extensive damage to the steel clad entryway door. Fire investigators also observed soot staining, charring, and melting to the vinyl siding in the area of the entryway door. In addition, fire investigators found a burned newspaper in the front yard area of the building. Fire investigators also found small glass fragments, paper, and red plastic littered across the sidewalk and street in front of 47 Chapel Street.

5. Investigators from the Lowell Fire Department and the

State Police Fire Marshal's Office processed the fire scene and recovered, among other things, samples of glass, burned paper, gasoline, and paper consistent with an M-80 explosive. These samples were submitted to the State Police Crime Laboratory. The State Police Crime Laboratory confirmed the presence of gasoline and pyrotechnic powder in the samples taken from the fire scene. Based upon their investigations, including a review of the fire scene and the evidence collected, Lowell Fire Investigator Jason Strunk and State Fire Marshal Trooper James Welch concluded that the cause of the explosion was a hand-delivered, improvised explosive device, consisting of a glass jar, gasoline and an explosive initiating device (determined to be an M-80 explosive) which was placed on the hinge side of the front door to 47 Chapel Street. In the opinion of Investigator Strunk, had the device been placed on the non-hinge side of the door, the inside hallway likely would have sustained far greater fire damage. ATF Explosives Enforcement Officer Howard R. House has examined the collected evidence and determined that the device recovered on October 1, 2004 at 47 Chapel Street in Lowell, Massachusetts is an improvised incendiary weapon which constitutes a destructive device as defined in Title 26, United States Code, Section 5845(f).

    6.    Through interviews with residents of 47 Chapel Street, investigators learned that a female resident of 47 Chapel Street

had a disagreement with a male earlier in the evening on October 1, 2004. The investigation also revealed that the female resident had been engaged in prostitution and had brought the male to the second floor apartment, right side, at 47 Chapel Street to engage in sexual conduct for a fee. According to the female, Anissa Willette ("Willette"), who was interviewed on the morning of October 2, she was working in the area of Gorham Street and Appleton Street in the city of Lowell between 4:00 p.m. and 6:00 p.m. when she was approached by a male in a pick-up truck. The male identified himself as "Mike." At the time, Annisa Willette had a 15- to 25-bag a day heroin habit. The male asked her if she wanted a ride and she said yes. When she entered the truck, the male offered her $60 in exchange for oral sex. Anissa Willette then directed the male to 47 Chapel Street, where Willette was staying on and off with her friend, Tom Mascaro. Upon arriving at 47 Chapel Street, Willette and the male were let into the house by Tom Mascaro. Willette and the male then proceeded to second floor apartment. Also home in the apartment at the time was Tom Mascaro's son Mark Mascaro. Both Tom and Mark Mascaro have admitted to having heroin habits. Once inside the apartment, Willette brought the male into a bedroom and performed the agreed upon act in exchange for $60. According to Willette, there was a disagreement because the male wanted more than he paid for. Willette also stated that she became

uncomfortable because the male was getting very aggressive. As a result, Willette claimed that she needed to use the bathroom and left the bedroom. Willette then walked through Mark Mascaro's bedroom and through the living room, passing by Tom and Mark Mascaro, and stated that she was leaving. According to Willette, the apartment is set up in such a way that to get to the living room, you pass through Mark Mascaro's bedroom. She then exited the apartment and did not return that day. Shortly thereafter, the male exited the bedroom. Mark Mascaro then escorted the male, whom he described as a tall man with a mustache, dark complexion, approximately 220 to 230 pounds, and neatly dressed, downstairs and let him out. As he escorted the male downstairs, Mark Mascaro asked the male if he was ripped off. According to Mark Mascaro, the male stated that he got ripped off but that it was "chump change." The male also stated that he remembered the address and would be back. After the male left the building, Mark Mascaro saw him walking towards a black pick-up truck.

7. A few hours after the male left, Tom Mascaro heard a loud sound and felt his building shake and thought that the building had been "bombed." Tom Mascaro then looked down the front stairs and saw flames coming from the hallway near the front entry door. Tom Mascaro retrieved a bucket and was able to extinguish the flames with a couple of buckets of water.

8. Shortly before the explosion, a resident of 48 Chapel

Street, Virginia Rivera ("Rivera"), was outside of her residence talking on the phone. Rivera recalls looking across the street and seeing firecracker sparks coming from the front door of 47 Chapel Street. Moments later, Rivera heard and felt a loud explosion. When she looked across the street she saw fire at the base of the front door to 47 Chapel Street. Rivera does not recall seeing anyone in the front of the building prior to the explosion.

9. The owner of 47-49 Chapel Street, Antonio DeFreitas ("DeFreitas"), was present at 47-49 Chapel Street in the early evening on October 1, 2004. DeFreitas recalls that at approximately 5:00 p.m., he was in front of the property doing some maintenance work when he observed a male and a female drive up Chapel Street in a 2001 or 2002 dark blue, Dodge pick-up truck and park around the corner from 47-49 Chapel Street. DeFreitas had never seen the truck before but he recognized the female passenger as a woman he had seen before at 47-49 Chapel Street. According to DeFreitas, this woman had been identified previously by Tom Mascaro as Mascaro's daughter. After they parked, DeFreitas saw the woman approach 47 Chapel Street with the male, whom DeFreitas had never seen before. DeFreitas described the male as a strong, tall guy, with short, light brown hair, wearing blue jeans and a blue sweater. DeFreitas does not recall whether the male had any facial hair. DeFreitas recalls that they rang

the bell to 47 Chapel Street and Tom Mascaro came downstairs and let them in. Approximately twenty to twenty-five minutes later, DeFreitas saw the male exit the building and leave. Thirty minutes after seeing the male depart, DeFreitas left the property and returned to his home.

10. A second-floor resident of 56 Chapel Street, John Sousa ("Sousa"), recalls leaving his apartment at approximately 9:30 p.m. on October 1, 2004.[1] Just before leaving his apartment, Sousa recalls hearing the sound of a running car engine coming from outside his apartment. Sousa looked outside and saw a black pick-up truck parked outside. When Sousa left his apartment, he began walking down Chapel Street on his way to pick up a pizza at a nearby pizza shop. As Sousa walked down the street, the even numbered houses were on his right and the odd numbered houses were to his left. As Sousa walked in the direction of 47-49 Chapel, Sousa observed a man walk across Chapel Street, from the area of the pick-up truck, toward 47 Chapel. Sousa did not see the man's face but described him as about thirty years old, approximately 6'2", good build, and wearing a dark blue jacket and brown pants . He also described him as a big guy. Sousa also recalls that the man appeared to be turning away from him as if to hide his face from him. As the man headed toward 47 Chapel

---

[1] A 911 call was placed at approximately 10:37 p.m. Therefore, it is likely that Sousa left his apartment later than 9:30.

Street, Sousa noticed that the man was carrying a container that appeared to be some sort of coffee can. Sousa also noticed that the man was holding the container by its lid in such a way that it appeared he was trying not to spill the contents. Sousa then saw the man place the can at the front door to 47 Chapel Street on the hinge side of the door. The man then walked back to the pick-up, which Sousa described as a black, full-size pick-up truck. Sousa continued walking to the pizza shop and recalls hearing a loud "bang" as he was waiting inside the pizza shop.

    11. The interview of Anissa Willette on October 2, 2004, was conducted by Lowell Police Detective Brian Keefe and ATF Agent Konstantinos Balos. Several days after the interview, on or around October 9, 2004, Annisa Willette contacted Detective Keefe and informed him that she had seen the same male in the area of Appleton Street in Lowell driving the same pick-up truck that he had been operating on October 1. Annisa Willette also told Detective Keefe that she got a partial plate number; Willette stated that the first four digits of the license plate were 11ER. With that information, Detective Keefe ran a check through the Massachusetts Registry of Motor vehicles ("RMV") computer. Using the first four digits of the license plate, the RMV computer identified all Massachusetts registered vehicles with the first four digits 11ER. Detective Keefe does not recall exactly how many vehicles were listed, but he recalls that only

one vehicle matched the description of the male suspect's vehicle. That vehicle was a Dodge pick-up truck, license plate number 11ER39, registered to a Sheryl Vaccaro at 15 Old Carriage Path in Groton, Massachusetts. Further investigation revealed that Sheryl Vaccaro's husband's name was Michael Vaccaro.

12. After obtaining the full license plate, Detective Keefe ran it through a Lowell Police computer and learned that the same license plate had been run through their computer on October 11, 2004, by Lowell Police Officer Kenneth DesRoche. According to Officer DesRoche, at approximately 7:30 p.m. on October 11, he observed a dark colored pick-up truck bearing Massachusetts registration 11ER39 in the area of Appleton Street in Lowell, Massachusetts. Officer DesRoche saw a middle-aged white male in the driver's seat of the truck talking to a young Spanish female who was outside of the truck. After observing some suspicious behavior by the male and female that caused Officer DesRoche to believe the female was engaged in prostitution, he ran the truck's license plate through his onboard computer. Around the same time, Officer DesRoche saw the female get into the tuck and the truck drove away. As Officer DesRoche followed the truck he was notified that the truck was registered to a woman in Groton, Massachusetts. After receiving this information, Officer DesRoche intended to stop the car on suspicion of prostitution, but broke off his pursuit of the truck when he received another

9

radio dispatch.

13. After identifying Michael Vaccaro as a suspect, I retrieved Michael Vaccaro's license picture from the RMV. Vaccaro's license describes him as 6'4". I have personally met Michael Vaccaro. He is a large man, approximately 6'4", weighing approximately 270 pounds. With Vaccaro's RMV photograph, I prepared an eight-picture photographic array of similar looking males (see Exhibit 1 attached hereto), including Vaccaro's picture among the eight.

14. Witnesses Anissa Willette, Thomas Mascaro, and Mark Mascaro all viewed the array separately. Each positively identified Vaccaro as the male who was present at 47 Chapel on October 1, 2004 with Anissa Willette.

15. Witness Antonio DeFreitas viewed the photo array and identified, with 80% certainty, Vaccaro as the person he saw with Anissa Willette at 47 Chapel Street on October 1, 2004. DeFreitas also stated that he was positive that the other photographs were not of the person he saw that night.

16. Witness John Sousa said did not get a good look at the suspect's face. As a result, he was unable to make an identification.

17. Analyzing the glass remnants at the fire scene, agents were able to determine that the container used to construct the explosive device was a Martinson's brand instant coffee

10

container. With this information, Trooper Welch canvassed area grocery stores and determined that Martinson's brand instant coffee was sold by the Market Basket chain of supermarkets. Further investigation revealed that the nearest Market basket grocery store to Groton, Massachusetts, was in Westford, Massachusetts, at 160 Littleton Road. The manager of the Westford Market Basket, David Daigle, researched the market's records of transactions and determined that for the week ending October 2, 2004, there were three purchases of Martinson's brand instant coffee. One of those purchases was made on September 27, 2004, with a PIN-activate debit card, # 4020981000060342. Further investigation revealed that this debit card was issued by the Middlesex Savings Bank, located at 36 Summer Street in Natick, Massachusetts, to Sheryl Vaccaro, of 15 Old Carriage Path, Groton, Massachusetts. Bank records also reveal that this card has never been reported lost or stolen. In addition to the purchase on September 27, 2004, Sheryl Vaccaro's PIN-activated debit card was used to make four other purchases of Martinson's brand instant coffee at the same Market Basket. Those purchases were made on October 22, October 25, and October 28 of 2004, as well as September 5, 2004.

18.   On January 6, 2005, I along with Detective Keefe, went to 15 Old Carriage Path in Groton, Massachusetts, to interview Sheryl Vaccaro regarding her ownership of the Dodge pick-up

truck. When we arrived at the residence we were first encountered by Michael Vaccaro. After speaking very briefly with Sheryl Vaccaro, Michael Vaccaro said that he would answer any questions regarding the vehicle and told Sheryl to wait upstairs. Michael Vaccaro stated that he was the primary operator of the vehicle, using it over 90% of the time. Vaccaro also admitted that he occasionally goes to Lowell to purchase a magazine, Hemming's Motor News, at Tower News in Lowell. Vaccaro denied ever picking up any females in Lowell. Also during this interview, we asked Vaccaro if he used Martinson's brand instant coffee. He replied, "What does that have anything to do with it?" At the conclusion of the interview with Vaccaro, we asked if we could speak to Sheryl again. He replied by saying that she was upstairs taking a nap. At this same time, Sheryl Vaccaro came downstairs and entered the kitchen. I then asked her when she last purchased Martinson's brand instant coffee. Before she could answer, Michael Vaccaro, in a loud voice, told her not to answer that question.

19. Based on the above, I have probable cause to believe that on October 1 2004, Michael Vaccaro, did maliciously damage or destroy, or attempt to damage or destroy, by means of fire or an explosive, property used in interstate commerce or in any activity affecting interstate commerce, to wit: 47 Chapel Street, Lowell, Massachusetts, in violation of Title 18, United States Code, Section 844(i).

_____
Konstantinos Balos
Special Agent
Bureau of Alcohol, Tobacco,
Firearms and Explosives
Boston, Massachusetts

Subscribed and sworn to before me this fifth day of May, 2005.

_____
Marianne B. Bowler
United States Magistrate Judge









